# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2369

_____

| | | |
|---|---|---|
| Angelo Cremona, S.p.A., | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| R.S. Bacon Veneer Company, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: December 14, 2005
Filed: January 6, 2006

_____

Before WOLLMAN, BEAM, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

This is a contract dispute diversity action between R.S. Bacon Veneer Company (Bacon) and Angelo Cremona, S.p.A. (Cremona). Bacon appeals the district court's[1] denial of Bacon's motion for summary judgment and the grant of Cremona's motion for summary judgment ordering Bacon to indemnify Cremona for

_____

[1]The Honorable John A. Jarvey, United States Magistrate Judge for the Northern District of Iowa, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

liability deriving from a workplace accident lawsuit involving a machine sold to Bacon by Cremona.  We affirm.

## I.    BACKGROUND

In April 1997, Bacon, a manufacturing company with a wood veneer mill facility in Grundy Center, Iowa, and Cremona, an Italian corporation, entered into a written agreement by which Bacon agreed to purchase a wood veneer drying machine from Cremona and Cremona agreed to deliver and install it.  The purchase contract contained the following liability section:

> art. 6) MANUFACTURER'S LIABILITY
> 6.1  The Seller shall deliver to the Buyer the goods in compliance with the laws in force in Italy.  The Buyer shall check that the goods comply with the laws of the country of destination and shall properly inform the Seller, in any case prior to shipment of the goods, of any changes to be made; in which case the Seller shall be free to refuse the order or to charge a higher price.  *It is agreed that whatever liability may derive from the goods, due to events occurring after the passage of risks to the buyer, including any damage to person or to property* (even when such property includes parts or accessories of the machine), *shall be borne solely by the Buyer, who shall indemnify the Seller and further undertakes to take out adequate insurance against all relative risks without being entitled to make recourse to the Seller.*  The Buyer henceforth agrees to be cited in any instance of legal proceedings taken against the Seller in pursuance of the liability for herein.

(emphases added).  Cremona delivered and installed the machine between late 1997 and early 1998.

In April 2001, Bacon's employee Joshua Edwards (Edwards) severely injured himself while cleaning the machine.  Edwards sued Cremona, alleging product liability theories. Cremona then filed a third-party complaint against Bacon, alleging Bacon was obligated to indemnify and insure Cremona based on the purchase

contract. All parties subsequently entered into a three-way settlement providing for, *inter alia*, the survival of Cremona's third-party complaint against Bacon for indemnification and breach of the obligation to obtain insurance.

Bacon and Cremona agreed to submit their dispute via motions for summary judgment. The district court, applying Iowa law in the diversity action, granted Cremona's motion and denied Bacon's, holding the contract language "sufficiently establishes that the intent of the provision was to indemnify Cremona for <u>any</u> liability deriving from the [machine] due to events occurring once risk had passed to Bacon, which would include liability due to negligence on the part of Cremona." The district court did not reach the issue whether Bacon breached the contract by not obtaining insurance.

## II.   DISCUSSION

We review the district court's grant of summary judgment de novo, applying the same standard as the district court and examining the record in the light most favorable to the nonmoving party. <u>Woodland v. Joseph T. Ryerson & Son, Inc.</u>, 302 F.3d 839, 841-42 (8th Cir. 2002); <u>Butler v. MFA Life Ins. Co.</u>, 591 F.2d 448, 451 (8th Cir. 1979). Summary judgment is appropriate if the evidence demonstrates there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>see</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986). Because this case involves only questions of law, it is particularly appropriate for summary judgment. <u>Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc.</u>, 824 F.2d 582, 585 (8th Cir. 1987).

### A.   Iowa Law on Interpretation of Indemnification Contracts

Under Iowa law, "[a] contract for indemnification is generally subject to the same rules of formation, validity and construction as other contracts." <u>McNally & Nimergood v. Neumann-Kiewit Constructors, Inc.</u>, 648 N.W.2d 564, 571 (Iowa 2002) (citing <u>Evans v. Howard R. Green Co.</u>, 231 N.W.2d 907, 916 (Iowa 1975)). In

interpreting and construing a contract's indemnity provision, a court must resolve two questions: "(1) for whose negligent acts causing damage is indemnity promised? and (2) what is the scope of the area in which indemnity is available?" Modern Piping, Inc. v. Blackhawk Automatic Sprinklers, Inc., 581 N.W.2d 616, 624 (Iowa 1998), overruled on other grounds by Wesley Retirement Servs., Inc. v. Hansen Lind Meyer, Inc., 594 N.W.2d 22 (Iowa 1999).

Regarding "contracts purporting to provide for indemnity for an indemnitee's own negligence," we see no reason to try to improve on the succinct recitation of how Iowa courts interpret such provisions provided by Chief District Judge Bennett in Cochran v. Gehrke, Inc., 293 F. Supp. 2d 986, 994-95 (N.D. Iowa 2003):

> Although indemnity contracts are generally subject to the same rules of construction as other contracts, Iowa courts have crafted a special rule of construction for indemnification contracts when, as here, such contracts purport to relieve the indemnitee from liability for its own negligence. This rule provides that indemnification contracts will not be construed to permit an indemnitee to recover for its own negligence unless the intention of the parties is clearly and unambiguously expressed. Thus, indemnification contracts claimed to contain these provisions are construed more strictly than other contracts.
> However, . . . express language relieving the indemnitee of its own negligence is not required, if the words of the agreement clearly import that intent. . . . [Iowa courts'] rule of construction does not actually require the contract to specifically mention the indemnitee's negligence or fault as long as this intention is otherwise clearly expressed by other words of the agreement. . . . In each case, the intent of the parties will control as revealed by the language of the agreement, and we should not impose any special requirement that specific language be used to express that intent. Thus, even broad indemnity language may reveal an intent to indemnify an indemnitee for its own negligence.

(citing McNally & Nimergood, 648 N.W.2d at 571-72; McComas-Lacina Constr. Co. v. Able Constr., 641 N.W.2d 841, 845 (Iowa 2002); Martin & Pitz Assocs., Inc. v. Hudson Constr. Servs., Inc., 602 N.W.2d 805, 809 (Iowa 1999); Herter v. Ringland-Johnson-Crowley Co., 492 N.W.2d 672, 674 (Iowa 1992); Payne Plumbing & Heating Co. v. Bob McKiness Excavating & Grading, Inc., 382 N.W.2d 156, 160 (Iowa 1986)) (internal quotations and alterations omitted).

## B.     Analysis of the Purchase Contract

Following the Iowa Supreme Court's instruction in Modern Piping, we first ask "for whose negligent acts causing damage is indemnity promised?" Modern Piping, 581 N.W.2d at 624. While the contract never expressly announces liability for negligent acts as a contender for indemnification, we conclude the agreement unambiguously intended the indemnity provision to include liability for damages from either party's negligent acts. Section 6.1 of the contract provides "*whatever liability* may derive from the goods, due to events occurring after the passage of risks to the buyer, including any damage to person or to property . . . shall be borne solely by the Buyer, who shall indemnify the Seller." The broad inclusive language is clear. The only reasonable interpretation is "whatever liability" deriving from "events" covers liability stemming from both parties' negligent acts.

Despite this unambiguous language, Bacon argues the parties never intended for Bacon to indemnify Cremona for Cremona's own negligence, i.e., the defective design of the machine. Bacon's argument boils down to a contention that the term "event" in the contract is ambiguous because "[a]ny number of 'events' could serve as the source from which liability is 'derive[d]' in relation to the Cremona machine." Bacon claims the "event" giving rise to its liability was not Edwards's 2001 accident, but Cremona's defective design of the machine before the passage of risks when

-5-

Bacon took possession. Thus, Bacon claims, this "event" is not covered by the provision and Bacon owes no indemnification duty to Cremona.[2]

While cleverly conceived, we disagree with Bacon's claim, for as C.S. Lewis said, "[n]o clever arrangement of bad eggs ever made a good omelet." The precise event giving rise to a tort suit is the event causing the actual injury or damages. As Cremona points out, "there can be no tort liability without damage to persons or property." See, e.g., Cunningham v. Kartridg Pak Co., 332 N.W.2d 881, 885 (Iowa 1983) ("Implicit in [product liability] law is the notion that the defective product caused *physical harm* to the plaintiff or his property."). Edwards had no right to sue under a product liability theory for a design defect until he was actually injured, and Cremona or Bacon could only be liable after that point in time. See, e.g., Osborn v. Massey-Ferguson, Inc., 290 N.W.2d 893, 901 (Iowa 1980) (stating plaintiff's burden in establishing a prima facie case of strict liability in tort includes demonstrating "damages suffered by the user or consumer"). The issue here is not what proximately caused Edwards's injury, which may include a design defect, see id., but what "event" gave rise to liability. The only event that ultimately could give rise to liability was the event resulting in the injury to Edwards, not the infinite number of events leading up to the defective product appearing in Bacon's facility and leading to Edwards's injury.

Given the parties intended the contract's indemnity provision to cover liability resulting from both their negligent acts, we next ask "what is the scope of the area in which indemnity is available?" Modern Piping, 581 N.W.2d at 624. Again, the language is unambiguous. The indemnity provision covers all liability and any damage deriving from the wood veneer drying machine due to events occurring after

---

[2]Bacon does not dispute the passage of risks occurred when Bacon took possession of the machine.

the passage of risks to Bacon. This clearly includes Edwards's accident, which derived from the machine and occurred after the passage of risks to Bacon.

Our decision to affirm the district court and hold Bacon must indemnify Cremona is empathetic to the reasonable expectations of these sophisticated commercial parties. The contract imposed liability on Cremona for "damages[] to people or things" up to and including delivery and installation of the machine by Cremona employees, then the contract expressly shifted liability to Bacon for all damages once Cremona was out of the picture. It certainly is sensible Cremona would contractually limit its liability once its employees were no longer present and had no control over the machine's operation. As the district court noted by quoting our decision in Union Electric Co. v. Southwestern Bell Telephone L.P., 378 F.3d 781, 786-87 (8th Cir. 2004),

> An agreement making each of these large commercial entities responsible [via the indemnity provision] for injuries to their own customers, agents, contractors and employees is a sensible allocation of loss because each is in a better position to protect and insure against those losses by virtue of the ability to instruct and train those persons who access the [machine] with their permission. [Bacon and Cremona] have little or no ability to control, train or instruct the customers, agents, contractors and employees of the other.

Finally, because we affirm the district court on the ground Bacon must indemnify Cremona under the purchase contract's indemnity provision, we need not reach the issue whether Cremona should be granted summary judgment based on Bacon's alleged failure to procure insurance protecting Cremona.

## III. CONCLUSION

For the reasons stated, we affirm the district court's grant of summary judgment to Cremona.

_____