# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2682

_____

Mindy Bloom,          \*

                         \*

         Appellant,        \*

                         \*    Appeal from the United States

     v.                    \*    District Court for the Eastern

                         \*    District of Missouri.

Metro Heart Group of      \*

St. Louis, Inc.,           \*

                         \*

         Appellee.      _____

Submitted: December 14, 2005
Filed: March 16, 2006

_____

Before MELLOY, COLLOTON, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Mindy Leigh Bloom sued her former employer, Metro Heart Group of St. Louis, Inc., claiming retaliatory discharge for exercising rights under the Missouri Workers' Compensation Act, as well as violations of the Family and Medical Leave Act (FMLA). The district court[1] granted summary judgment to Metro. Bloom appeals. Jurisdiction being proper under 28 U.S.C. § 1291, this court affirms.

_____

[1]The Honorable Henry E. Autrey, United States District Judge for the Eastern District of Missouri.

# I.

In 1999, Bloom was diagnosed with carpal tunnel syndrome. In March 2000, Metro hired her as an ultrasound sonographer, requiring her to grip an ultrasound machine for 95 percent of the work day. Within three months, the carpal tunnel symptoms recurred, and Bloom sought treatment for tingling and numbness in her hands. Her physician said the symptoms were work-related, but at that time placed no restrictions on her ability to function.

In March 2002, Bloom reported to Metro that she was experiencing pain. Metro filed a Report of Injury with the Division of Workers' Compensation. On March 21, 2002, Bloom filed a workers' compensation claim against Metro. Metro then sent her to its doctor who also diagnosed carpal tunnel syndrome. This doctor cautioned Bloom about "gripping" and put limitations on her ability to work, pending further tests and "possible surgery." The doctor then reported to Metro that "it is suggested" that Bloom limit her activity to "light gripping only" and "no gripping with either hand for greater than 15 minutes" per patient. Bloom testified that for the majority of patients, she had to grip the machine for more than 15 minutes. These restrictions significantly limited Bloom's ability to operate the ultrasound machine.

Before the doctor's report arrived, Bloom informed Metro about the suggestions. Metro placed Bloom on FMLA leave until she had medical clearance to return to work. Metro sent Bloom an FMLA form stating she was on leave due to "a serious health condition that makes you unable to perform the essential functions of your job." The form required a "fitness-for-duty certificate" before she could return to work. The form also informed Bloom that her leave counted against her annual FMLA entitlement but that she could substitute paid leave for unpaid FMLA leave.

Bloom was absent from work from May 2, 2002 to July 30, 2002, the date when Metro discharged her. The district court ruled that Bloom used her full 12 weeks of FMLA leave, and, because her physical condition and inability to do her job had not changed, Metro could discharge her.

## II.

This Court reviews a grant of summary judgment de novo. *Laughlin v. Schriro*, 430 F.3d 927, 928 (8th Cir. 2005). Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* **Fed. R. Civ. P. 56(c)**; *Aviation Charter, Inc. v. Aviation Research Group/U.S.*, 416 F.3d 864, 868 (8th Cir. 2005); *Dulany v. Carnahan*, 132 F.3d 1234, 1237 (8th Cir. 1997). This Court examines the record in the light most favorable to the nonmoving party. *Cremona v. R.S. Bacon Veneer Co.*, 433 F.3d 617, 619 (8th Cir. 2006).

## A.

In Missouri, no employer shall discharge an employee for exercising any rights under the Workers' Compensation Act. *See* **Mo. Rev. Stat. § 287.780**. However, the Act was enacted into law against the backdrop of the "at will" doctrine. *See Crabtree v. Bugby*, 967 S.W.2d 66, 70 (Mo. banc 1998). "Absent a contrary statutory provision, an at will employee cannot maintain an action for wrongful discharge against his employer." *Dake v. Tuell*, 687 S.W.2d 191, 193 (Mo. banc 1985). "In the absence of a contract for employment for a definite term or a contrary statutory provision, an employer may discharge an employee at any time, without cause or reason, or for any reason, and in such cases no action can be obtained for wrongful discharge.'" *Amaan v. City of Eureka*, 615 S.W.2d 414, 415 (Mo. banc 1981). The Workers' Compensation Act did not abolish the at will doctrine, but rather "provided a limited exception which allows an action where there was an exclusive causal

relationship between the discharge and the employee's exercise of rights granted under chapter 287 RSMo 1978." *Crabtree*, 967 S.W.2d at 70. "If the evidence demonstrates that the employer had just cause for terminating the employment, other than for the employee's exercise of her rights under the Act, then the employee cannot recover under section 287.780." *St. Lawrence v. Trans World Airlines, Inc.*, 8 S.W.3d 143, 150 (Mo. App. 1999).

To establish a claim for retaliatory discharge, Bloom must prove: (1) she was employed by Metro before the injury; (2) she filed a workers' compensation claim; (3) Metro discharged her; and (4) there is an exclusive causal relationship between her filing and her discharge. *See Crabtree*, 967 S.W.2d at 70; *Hansome v. Nw. Cooperage Co.*, 679 S.W.2d 273, 275 (Mo. banc 1984). "Causality does not exist if the basis for discharge is valid and nonpretextual." *Hansome*, 679 S.W.2d at 275 n.2. The only element in dispute is whether there is an exclusive causal relationship between Bloom's filing of the claim and Metro's discharge of her.

The district court found that Metro's discharge of Bloom was "legitimate in that it recognized plaintiff had a condition which would be affected by her employment with defendant." Because Bloom's job at Metro required her to grip for extended periods of time, the district court concluded that she "could not perform the essential functions of her job."

Bloom believes that Metro intended from May 2 – the date its doctor mentioned "surgery" – to discharge her for filing a workers' compensation claim. She outlines 19 paragraphs, which mix factual disputes with conclusory allegations and speculation. Bloom's speculation and conjecture are insufficient to defeat summary judgment. *See Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir. 1994). Moreover, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 247-48 (1985) (emphasis in original). Bloom must demonstrate a genuine issue of material fact, that is a dispute that might "affect the outcome of the suit under the governing law," so that "a reasonable jury could return a verdict for the nonmoving party," Bloom. *See id.* at 248.

Even if the 19 paragraphs are interpreted favorably to Bloom, Metro consistently followed the doctor's restrictions, which prevented her from performing the essential functions of her job. "A plaintiff's inability to do the job would seem to be fatal to any claim that the exercise of a workers' compensation right was the sole reason for the discharge." **37 William C. Martucci, Missouri Practice § 12.22, at 435 (2005)** (summarizing cases). This proposition is clearly the law in Missouri. *See Hansome*, 679 S.W.2d at 275 n.2, *approving three cases*: *Mitchell v. St. Louis County*, 575 S.W.2d 813, 815-16 (Mo. App. 1978) (employer may fire employee for excessive absenteeism, even if absenteeism is caused by compensable injury); *Rodriguez v. Civil Serv. Comm'n*, 582 S.W.2d 354, 355 (Mo. App. 1979) (the Compensation Act does not guarantee an employee who is unwilling or unable to work will be able to return to old job); and *Davis v. Richmond Special Road Dist.*, 649 S.W.2d 252, 255-56 (Mo. App. 1983) (approving directed verdict where, after suffering compensable injury, employee returned to work on a trial basis, but was fired for being unable to perform job). *See generally Crabtree*, 967 S.W.2d at 72 ("The purpose of the workers' compensation law, including the rule of liberal construction, is to compensate workers for job-related injuries; it is not to insure job security.").

Bloom objects that Metro did not follow the most relevant medical opinion because it ignored the "Discussion" in a report by another physician (Dr. Henry G. Ollinger) it paid to examine Bloom. Concluding his four-page report, Dr. Ollinger states:

Whatever direction or energies her previous treating physicians think best for her, it should be carried on by them in her behalf.

If she were working, I would not be able to determine any medical basis to restrict work activities as a sonographer/electrocardiographer/ ultrasound technician.

Bloom believes that this means that the original medical restrictions were lifted and she could work, so that Metro's cause is pretextual. The quoted Discussion is too vague to rescind the original restrictions and too conditional to contradict Metro's doctor.

Because Metro had a valid, non-pretextual reason to discharge her, Bloom cannot prove that the workers' compensation claim was the exclusive cause of her termination. No genuine issues of material fact exist as to the workers' compensation claim, and Metro is entitled to judgment as a matter of law.

B.

Upon return from FMLA leave, an employee is entitled to be restored to the same position held prior to the beginning of the leave, or its equivalent, in terms of benefits, pay and other terms and conditions. **29 U.S.C. § 2614(a)(1)**. "However, an employee is not entitled to restoration if, at the end of the FMLA leave period, the employee is still unable to perform an essential function of the job." *Hatchett v. Philander Smith Coll.*, 251 F.3d 670, 677 (8th Cir. 2001), *citing* **29 C.F.R. § 825.214(b)**; *see also* *Reynolds v. Phillips & Temro Indus., Inc.*, 195 F.3d 411, 414 (8th Cir. 1999).

Although Bloom has continually maintained that she was able to perform the essential functions of her job, the record refutes this. Dr. Tucker restricted her to "light gripping," and no gripping for more than 15 minutes per patient. Because

gripping is required to operate the ultrasound machine, Bloom's restrictions prevented her from performing this essential function. Bloom emphasizes that she has always believed she was able to work. The district court countered, "To do so, however, plaintiff would have to ignore Dr. Tucker's restrictions." *See **Duty v. Norton-Alcoa Proppants***, 293 F.3d 481, 495 (8th Cir. 2002) (medical release qualifies employee for job restoration under FMLA).

When Bloom's condition did not change during her FMLA leave, Metro was not required to reinstate her. "As long as an employer can show a lawful reason, i.e., a reason unrelated to an employee's exercise of FMLA rights, for not restoring an employee on FMLA leave to her position, the employer will be justified to interfere with an employee's FMLA leave rights." ***Throneberry v. McGehee Desha County Hosp.***, 403 F.3d 972, 979 (8th. Cir. 2005).

Bloom also contends that Metro's requirement for a fitness-for-duty certificate violates the FMLA. An employer may require medical certification demonstrating fitness-for-duty, as long as this policy or practice is uniformly applied to all similarly-situated employees who take leave for serious health conditions. *See* **29 U.S.C. § 2614(a)(4)**; **29 C.F.R. § 825.310(a)**. Shortly after beginning FMLA leave, Bloom received the FMLA form stating that she was required:

> "to present a fitness-for-duty certificate prior to being restored to employment. If such certification is required but not received, your return to work may be delayed until certification is provided."

Bloom never returned such a certificate (or any equivalent statement). Although she presented a certificate to two of her physicians, neither completed and returned the form. Bloom emphasizes the Discussion in Dr. Ollinger's report (quoted above), which she argues is equivalent to a fitness-for-duty certificate. As noted, it is too vague and conditional to constitute a statement that Bloom was fit-for-duty.

In a different attack, Bloom claims that Metro's certificate policy is not "uniformly applied" because it treats similarly-situated employees differently. The parties agree that Metro uniformly required all employees *on FMLA leave* to provide a medical certificate before returning to work. However, Metro does not require a certificate from employees on non-FMLA leave.

Bloom ignores the clear language of the FMLA:

> As a condition of restoration under paragraph (1) for *an employee who has taken leave under section 2612(a)(1)(D) of this title* [FMLA leave], the employer may have a uniformly applied practice or policy that requires *each such employee* to receive certification from the health care provider of the employee that the employee is able to resume work....

**29 U.S.C. 2614(a)(4)** (emphasis added).

The "employee" who must receive certification is an employee who has taken FMLA leave. Thus, Bloom need only be treated similarly to other employees on FMLA leave at Metro. *See* **29 C.F.R. § 825.310(a)**. Metro's practice and policy on FMLA fitness-for-duty certificates comply with federal law.

Finally, Bloom claims that her FMLA leave did not start until May 16, the day she began paid leave, so that Metro did not provide the 12 weeks required by 28 U.S.C. 2612(a)(1)(D). Metro's policy is that FMLA leave is generally unpaid. Metro did not require Bloom first to exhaust paid leave. *See* **29 U.S.C. § 2612(d)(2)(A)**. When her paid leave began is irrelevant. Her FMLA leave began on May 2, the date she qualified for a serious health condition, making her unable to perform the functions of her position. *See* **id. § 2612(a)(1)(D)**.

Alternatively, Bloom claims that her FMLA leave began July 1, the day her paid leave ended. To the contrary, Bloom's leave began the day she qualified for a

-8-

serious health condition. *See id.* Although Bloom elected to substitute unpaid FMLA leave for paid leave, this substitution does not entitle her to additional leave. *See* **29 U.S.C. § 2612(d)(2)(A)**. "Paid vacation or personal leave, including leave earned or accrued under plans allowing 'paid time off,' may be substituted, at either the employee's or the employer's option, for any qualified FMLA leave." **29 C.F.R. § 825.207(e)**.

The district court properly granted summary judgment to Metro because Bloom could not perform the essential functions of her job after the FMLA leave.[2] "The FMLA does not require an employer to allow an employee to stay in a position that the employee cannot perform." *Hatchett*, 251 F.3d at 677.

III.

The judgment of the district court is affirmed.

_____

[2]In her brief, Bloom asks in passing that if this court affirms summary judgment on the FMLA claim, it remand the workers' compensation claim to state court, citing 28 U.S.C. § 1445(c). Bloom waived this argument when she did not timely move for remand in the district court, on this ground. *See Phillips v. Ford Motor Co.*, 83 F.3d 235, 236 n.3, 237 n.5 (8th Cir. 1996), *following Williams v. AC Spark Plugs*, 985 F.2d 783, 786 (5th Cir. 1993). Because the district court had federal question jurisdiction of the FMLA claim, it properly exercised supplemental jurisdiction over the workers' compensation claim. *See Alternative Fuels, Inc. v. Cabanas*, 435 F.3d 855, 857 n.2 (8th Cir. 2006). *See generally Grubbs v. Gen. Elec. Credit Corp.*, 405 U.S. 699, 702 (1971) (where after removal a case is tried on the merits without objection and the federal court enters judgment, the issue in subsequent proceedings on appeal is not whether the case was properly removed, but whether the federal district court would have had original jurisdiction of the case had it been filed in that court).