# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2210

_____

In re: Norfolk Southern Railway     *
Company,     *
    *
Petitioner.     *


_____

No. 09-2333

_____

David Demay,     *
    *
Appellee,     *
    *
v.     *
    *
Norfolk Southern Railway     *
Company,     *
    *
Appellant.     *

Appeals from the United States
District Court for the
Eastern District of Missouri.

[PUBLISHED]

_____

Submitted: September 21, 2009
Filed: January 27, 2010

_____

Before WOLLMAN, HANSEN, and SHEPHERD, Circuit Judges.

_____

HANSEN, Circuit Judge.

David Demay, an employee of the Norfolk Southern Railway Company (Norfolk Southern), was injured while working in Norfolk, Virginia, at the Lamberts Point Coal Terminal (Lamberts Point). A Missouri resident, Demay filed a lawsuit against Norfolk Southern in Missouri state court under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51 to 60. Norfolk Southern removed the lawsuit to the United States District Court for the Eastern District of Missouri, claiming the action was governed by the Longshore and Harbor Workers' Compensation Act (Longshore Act), 33 U.S.C. §§ 901 to 950. The district court[1] determined that the action was appropriately brought under the FELA and remanded the case back to state court. Norfolk Southern appeals. For the following reasons, we affirm.

I.

Lamberts Point is a coal-loading facility that Norfolk Southern uses to load coal into oceangoing vessels. Lamberts Point is divided into four areas: the CT Yard, the Barney Yard, Pier 6, and the empty yard. Arriving loaded coal cars are stored in the CT Yard. The loaded cars are then brought into the Barney Yard and secured by setting their manual brakes. Once there, they are released one by one and roll down an incline onto one of two rotary dumpers. The dumpers rotate the cars and dump the coal onto conveyors, which move the coal to Pier 6 to be deposited into the holds of oceangoing colliers. Once the cars are unloaded, they are moved to the empty yard to return to the coal mines for refilling.

Demay, a railroad switchman/conductor employed by Norfolk Southern, lives in Huntsville, Missouri. On October 22, 2008, he was temporarily working at Lamberts Point when he was injured. Demay's crew's job was to place (i.e., "spot") the rail cars in the Barney Yard and set their handbrakes to keep them in place. Other

_____

[1]The Honorable Rodney W. Sippel, United States District Judge for the Eastern District of Missouri.

-2-

workers later would release the cars, sending them down the incline to the rotary dumpers. At the time of the injury, his crew was spotting rail cars loaded with coal in the Barney Yard. Demay climbed onto the lead loaded car and directed the movement of the string of loaded cars into the Barney Yard while communicating by radio with the locomotive engineer at the other end of the moving cars. When the cars were in their proper place, Demay told the engineer to stop the train. While climbing down off the car, Demay fell and landed on the track, breaking several ribs.

Demay filed a lawsuit in the Circuit Court of St. Louis County, Missouri, to recover for his injuries under the FELA. A case filed in state court under the FELA may not be removed to federal court by the defendant. See 28 U.S.C. § 1445(a) ("A civil action in any State court against a railroad . . . arising under [45 U.S.C. §§ 51 to 60] may not be removed to any district court of the United States."). However, Norfolk Southern removed Demay's suit to federal court, claiming that Demay's claims are controlled exclusively by the Longshore Act because Demay was engaged in maritime employment at the time of his injury. To be covered by the Longshore Act, an employee must be injured while working: (1) at a maritime *situs*; and (2) in a maritime *status*. Ne. Marine Terminal Co., Inc. v. Caputo, 432 U.S. 249, 265 (1977). Both parties agree that Demay was working at a maritime situs. The district court held that Demay was not working in a maritime status, and it found that his injury was covered by the FELA, not the Longshore Act, and it therefore lacked removal jurisdiction to review the claim. The district court thus remanded the case to the state court.

Norfolk Southern appeals. On appeal, Demay argues that we cannot review the district court's decision because we lack jurisdiction to review the district court's order under 28 U.S.C. § 1447(d), which precludes a court of appeals from reviewing a district court's order remanding a case to state court based on lack of subject matter jurisdiction. Norfolk Southern, however, argues that we have jurisdiction to review the district court's order deciding the Longshore Act issue and the order of remand.

It further argues that Demay was injured while working in a maritime status and that we should issue a writ of mandamus directing the district court to dismiss the action without prejudice and permit the Department of Labor (DOL) to resolve Demay's claim.[2]

## II.

## A.

We must first address the question of our jurisdiction. "Congress has limited our power to review district court remand orders." Filla v. Norfolk S. Ry. Co., 336 F.3d 806, 809 (8th Cir. 2003). The court's "ability to review the order depends on the district court's basis for remand. A remand order based upon lack of subject-matter jurisdiction is not reviewable on appeal." Id. "If a district court's order is based upon a lack of subject-matter jurisdiction, the order—whether erroneous or not and whether review is sought by appeal or by extraordinary writ—must stand." Id. When determining the basis for remand, "'[t]his court reviews a lower court's reasoning for remand independently and determines from the record the district court's basis for remand.'" Id. (quoting Lindsey v. Dillard's, Inc. 306 F.3d 596, 598 (8th Cir. 2002)).

According to 28 U.S.C. § 1447(c), "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. . . . The State court may thereupon proceed with such case." Section 1447(d) states that, "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise . . . ." In analyzing 28 U.S.C. § 1447(c) and (d), the Supreme Court has explained that they should be read together.

---

[2]Typically, the DOL's Benefits Review Board initially resolves claims under the Longshore Act. 33 U.S.C. § 919. The courts of appeals have jurisdiction to review the final orders of the Benefits Review Board. 33 U.S.C. § 921(c).

See Thermtron Prods., Inc. v. Hermansdorfer, 423 U.S. 336, 343-44 (1976) (holding that a remand was reviewable and ultimately improper when the district court remanded to state court based on the district court's heavy docket, which was not provided for in § 1447(c)).

When a plaintiff files an FELA complaint in state court, a defendant may not remove the lawsuit to federal court. See 28 U.S.C. § 1445(a) ("A civil action in any State court against a railroad . . . arising under [45 U.S.C. §§ 51 to 60] may not be removed to any district court of the United States."); Evans v. Mo. Pac. R.R. Co., 795 F.2d 57, 58-59 (8th Cir. 1986) ("[I]f the employee chooses to bring an FELA claim in state court, section 1445(a) protects [the] plaintiff's right to bring the action there and prevents removal to the federal district court by the railroad."), cert. denied, 431 U.S. 1013 (1987). After Norfolk Southern removed the case to federal court, the district court remanded the case to state court because § 1445(a) prohibited removal.

Demay argues that because the district court remanded the case to state court based on the prohibition of removal in § 1445(a), the district court effectively remanded based on lack of subject matter jurisdiction, which would preclude us from reviewing the remand order under § 1447(c) and (d). Norfolk Southern, however, argues that the remand order was merely a straightforward application of § 1445(a) and that in remanding the case to state court, the district court made no determination regarding subject matter jurisdiction.

We have not previously addressed the issue of whether § 1445(a) is jurisdictional. However, we have implicitly held that 28 U.S.C. § 1445(c), which is parallel to § 1445(a), is *not* jurisdictional.[3] In Bloom v. Metro Heart Group of St. Louis, Inc., 440 F.3d 1025 (8th Cir. 2006), a plaintiff filed a complaint against her

[3]Section 1445(c) reads, "[a] civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States."

employer, claiming violations of the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601 to 2654, and workers' compensation laws. The case was removed to federal court by the employer, and the district court granted summary judgment in favor of the employer on the FMLA claim. We affirmed and, in a footnote at the end of our opinion, stated that, in her brief, the plaintiff "ask[ed] in passing that if this court affirms summary judgment on the FMLA claim, it remand the workers' compensation claim to state court, citing 28 U.S.C. § 1445(c). [The plaintiff] *waived this argument when she did not timely move for remand* in district court, on this ground." Bloom, 440 F.3d at 1031 n.2 (emphasis added). Like Bloom, in Phillips v. Ford Motor Co., 83 F.3d 235 (8th Cir. 1996), in discussing the procedural history of the case before resolving the merits, we stated that the plaintiff had filed a complaint against the defendants on a workers' compensation claim, but that the defendants had removed the case to federal court based on diversity jurisdiction. We explained that "[a]ctually, the district court lacked removal jurisdiction by operation of 28 U.S.C. § 1445(c) (civil action in state court arising under workers' compensation laws of that state may not be removed). However, plaintiffs *failed to timely move for remand*." Phillips, 83 F.3d at 236 n.3 (emphasis added) (citation omitted). If § 1445 truly involved subject matter jurisdiction, it could not be waived, as parties cannot waive subject matter jurisdiction. See United States v. Cotton, 535 U.S. 625, 630 (2002) (explaining that "subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived").

While § 1445(a) does involve a different subject matter than § 1445(c), because the two statutes are parallel, Congress likely intended that the two be interpreted similarly. See, e.g., Nijhawan v. Holder, 129 S. Ct. 2294, 2301 (2009) ("Where . . . Congress uses similar statutory language and similar statutory structure in two adjoining provisions, it normally intends similar interpretations."). Accordingly, because we held in Bloom and Phillips that parties had waived their arguments that their claims should have been remanded to state court under § 1445(c), then § 1445(c) cannot involve subject matter jurisdiction. And because § 1445(a) and § 1445(c)

should be interpreted similarly, see Nijhawan, 129 S. Ct. at 2301, we conclude that § 1445(a) likewise does not involve subject matter jurisdiction.

Other circuits have also held that § 1445(a) is not a jurisdictional statute. In Feichko v. Denver & Rio Grande Western Railroad Co., for example, the Tenth Circuit held that as long as the federal district court would have had jurisdiction over the case if it had been originally filed there, "removal in violation of section 1445(a) may be waived by a plaintiff, either by a failure to move the district court to remand, . . . or by a failure to raise the matter on appeal." Feichko, 213 F.3d 586, 591 (10th Cir. 2000), cert. denied, 531 U.S. 1074 (2001). See also Albarado v. S. Pac. Transp. Co., 199 F.3d 762, 765 (5th Cir. 1999) (explaining that it had "consistently held that . . . § 1445(a) is not jurisdictional" and that "wrongful removal is a procedural defect, which may be waived if not timely asserted"); Carpenter v. Baltimore & O.R. Co., 109 F.2d 375, 379-80 (6th Cir. 1940). And the Fourth Circuit has held that because the question of whether the Longshore Act applies to a work related injury is exclusively a federal question that cannot be resolved by state courts, it had jurisdiction to review the claim in spite of § 1445 and § 1447. Shives v. CSX Transp., Inc. (In re CSX Transp., Inc.), 151 F.3d 164, 167 (4th Cir.), cert. denied, 525 U.S. 1019 (1998).

Because we conclude that § 1445 is not a jurisdictional statute, the district court's remand order was not based on a lack of subject matter jurisdiction. Accordingly, § 1447, which precludes us from reviewing a district court's order remanding the case to state court based on its own lack of subject matter jurisdiction, does not apply here. Thus, we have jurisdiction to review the merits of the district court's remand order.

B.

After determining that we have jurisdiction to review the district court's remand order, we must now turn to the merits of the district court's decision remanding the

-7-

case to state court because Demay's injury was covered by the FELA, not the Longshore Act.

To determine if an injured employee is covered by the Longshore Act, we look to whether the injured employee was working: (1) at a maritime *situs*; and (2) in a maritime *status*. See Caputo, 432 U.S. at 264-65 ("The 1972 Amendments [to the Longshore Act] thus changed what had been essentially only a 'situs' test of eligibility for compensation to one looking to both the 'situs' of the injury and the 'status' of the injured."). To meet the situs requirement of the Longshore Act, the injury must occur "upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel)." 33 U.S.C. § 903(a). Both parties agree that the situs requirement was met, as the injury occurred at Lamberts Point.

The status test is occupational, although Congress has failed to specify exactly what types of jobs meet the status requirement of the Longshore Act. In 33 U.S.C. § 902(3), Congress defined, for the purposes of the Longshore Act, "employee" as "any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, shipbuilder, and ship-breaker," but the statute excluded various other specific groups of individuals if they were covered by a state workers' compensation law. Additionally, the Supreme Court has held that land-based activity, including work done by railway employees, can qualify for coverage under the Longshore Act. See Chesapeake & O. Ry. Co. v. Schwalb, 493 U.S. 40, 48 (1989) (holding that railway employees engaged in cleaning spilled coal during the loading process were covered by the Longshore Act).

According to the Supreme Court, Congress did not necessarily want the focus to be on the exact activity the employee was engaged in at the time of the injury, but

rather the employee's occupation. See Caputo, 432 U.S. at 273 ("Both the text and the history demonstrate a desire to provide continuous coverage throughout their employment to these amphibious workers who, without the 1972 amendments, would be covered only for part of their activity."). "[W]hen Congress said it wanted to cover 'longshoremen,' it had in mind persons whose employment is such that they spend at least some of their time in indisputably longshoring operations and who, without the 1972 amendments, would be covered for only part of their activity." Id. The Supreme Court explained that the closest Congress came to defining the status requirement is the "typical example" of shoreward coverage contained in the Committee Reports. Id. at 266. "The example clearly indicates an intent to cover those workers involved in the essential elements of unloading a vessel—taking cargo out of the hold, moving it away from the ship's side, and carrying it immediately to a storage or holding area." Id. at 266-67. "The example also makes it clear that persons who are on the situs but are not engaged in the overall process of loading and unloading vessels are not covered." Id. at 267. In addition to discussing the "typical example" provided by Congress, in a similar situation the Supreme Court explained that to meet the status requirement, the job must involve loading or unloading. See Schwalb, 493 U.S. at 46 ("[T]he maritime employment requirement as applied to land-based work other than longshoring . . . is an occupational test focusing on loading and unloading. Those not involved in those functions do not have the benefit of the [Longshore] Act.") (citing Herb's Welding, Inc. v. Gray, 470 U.S. 414, 424 (1985)).

According to Norfolk Southern, "[t]he coal loading process is initiated when a permit is issued by Norfolk Southern for the ship describing the tonnage and number of coal cars for the vessel." (Appellant's Br. at 6.) However, in a case involving a similar procedure for loading coal onto vessels, the Supreme Court stated that, "[t]he loading process begins when a hopper car is rolled down an incline to a mechanical dumper which is activated by trunnion rollers and which dumps the coal through the hopper onto conveyor belts." Schwalb, 493 U.S. at 42-43. Here, the loaded cars are brought into the Barney Yard, spotted, and secured. After that, other workers, not

Demay or any of his crew, release the cars and send them down the incline to the rotary dumpers, which rotate the coal cars 180 degrees and dump the coal onto conveyors that move the coal onto Pier 6 for loading into the holds of coal ships. The process here is very similar to that in Schwalb, and so the Supreme Court's explanation as to when the loading process begins guides us. Moreover, the Fourth Circuit has relied on the Supreme Court's statement in determining whether an injury was covered under the Longshore Act in another case involving an injury that occurred at Lamberts Point. Etheridge v. Norfolk & W. Ry., 9 F.3d 1087, 1090 (4th Cir. 1998). In that instance, the injury occurred to someone initiating the descent of railroad cars. When considering the injury, the Fourth Circuit explained that, "[w]e believe that [the Supreme Court's statement regarding when the loading process begins] makes plain that a brakeperson in the Barney Yard, who initiates the descent of railroad cars to the pier, begins the loading process and, therefore, engages in employment that is essential to the loading process." Id. Here, in contrast, Demay's crew did not initiate the descent of railroad cars but instead worked with the cars before the loading process. He and his crew were spotting and securing the rail cars loaded with coal in the Barney Yard, *before* they were rolled down the incline to the dumpers. Thus, applying the Supreme Court's analysis, because Demay's duties were completed before the cars were released and began their descent, he was not involved in the loading process. Hence, his job was not covered under the "status" requirement of the Longshore Act. Additionally, even beyond the activity he was engaging in at the time of his injury, there is nothing in the record to indicate that his employment was such that he spent "at least some of [his] time in indisputably longshoring operations." See Caputo, 432 U.S. at 273.

Norfolk Southern argues that Demay's injury is covered by the Longshore Act because his actions were "essential or integral" to the loading process because "[s]witching the railroad cars into Barney Yard on to the correct tracks in the correct sequence is 'essential and integral' to the overall loading process." (Appellant's Br. at 31.) See, e.g., Schwalb, 493 U.S. at 46 (explaining that in Caputo, the Court held that

the Longshore Act "covered all those on the situs involved in the essential or integral elements of the loading or unloading process").  However, the activities must also be actually involved in the loading process itself.  For example, an individual working within the site who arranges the employee work schedules could be considered "essential or integral" to the overall loading process because without an organized work schedule no one would know when to come to work and the loading would never occur.  However, to conclude that this person meets the "status" requirement of the Longshore Act is plainly ridiculous.  While the Supreme Court did hold that janitors (whose work at times took them elsewhere on Lamberts Point) were covered by the Longshore Act, see id. at 48, they were injured while cleaning up coal that had spilled at the dumper location during the loading process.  Demay's duties were completed before the loading process began, he did not meet the status requirement of the Longshore Act, and therefore his injury is not covered by the Longshore Act.  His claim is brought under the FELA, and the district court did not err in remanding the case to the state court.  Thus, we respectfully reject Norfolk Southern's argument that we should issue a writ of mandamus directing the DOL to resolve Demay's claim.

III.

Accordingly, the judgment of the district court is affirmed.
_____