**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 07-1885**

WINFRED HOWARD,

Plaintiff - Appellant,

v.

INOVA HEALTH CARE SERVICES, d/b/a INOVA Health System,

Defendant - Appellee.

**No. 07-2035**

WINFRED HOWARD,

Plaintiff - Appellant,

v.

INOVA HEALTH CARE SERVICES, d/b/a INOVA Health System,

Defendant - Appellee.

Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, Senior District Judge; Gerald Bruce Lee, District Judge. (1:06-cv-00976-CMH; 1:07-cv-00647-GBL)

Argued: October 28, 2008          Decided: December 5, 2008

Before MOTZ, GREGORY, and DUNCAN, Circuit Judges.

———————————

Affirmed by unpublished per curiam opinion.

———————————

Nils George Peterson, Jr., Arlington, Virginia, for Appellant. William Boyle Porter, BLANKINGSHIP & KEITH, P.C., Fairfax, Virginia, for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

On August 24, 2006, Winfred Howard sued his employer, Inova Health Care Services, asserting interference and retaliation claims under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq. After Inova moved for summary judgment, Howard moved to dismiss his complaint without prejudice or, in the alternative, to amend his petition to add a claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. The district court denied Howard's motion and granted summary judgment in favor of Inova, finding that Inova had not violated the FMLA in disciplining Howard, transferring him to an alternate position, or terminating his employment. The court also found that Howard had failed to make a prima facie showing of retaliation. On July 3, 2007, Howard filed a second suit against Inova, asserting an ADA claim based on the same events that formed the basis for his FMLA claims. The district court in that case granted Inova's 12(b)(6) motion to dismiss Howard's complaint on the basis of *res judicata*. Howard now appeals the judgments of the district courts. For the reasons that follow, we affirm.

Howard first began working for Inova as an operating room ("OR") technician in 1993. In the fall of 1996, Howard informed Inova that he had been diagnosed with posttraumatic stress disorder ("PTSD"), triggered by exposure to blood or bodily fluids or the smell of burning flesh. He asked to be removed from his position for fear of endangering patients. Howard began using full-time and intermittent leave under the FMLA to address his PTSD and eventually was transferred to a supply and resource coordinator position that did not involve OR work.

Howard left Inova in 1997 and was unemployed for four years. In 2000, he sued Inova, alleging an ADA violation. While the lawsuit was pending, Inova rehired Howard in 2001 as a patient service coordinator, and the lawsuit was dismissed. Upon his reemployment, Howard was given access to Inova's employee booklet and FMLA policies.

On February 14, 2002, Howard was involved in a car accident and injured his back. He requested and was approved for 28 days of FMLA leave. He provided Inova with physicians' notes certifying that he was unable to attend work from February 14 to 19, 2002; February 27 to March 14, 2002; April 9 to 16, 2002; and April 19 to 26, 2002. J.A. 597–602. Howard was involved in a second car accident on November 26, 2002. He submitted

physicians' notes certifying that he should work reduced hours with certain restrictions on physical activity from December 7 to 21, 2002; December 18, 2002 to January 10, 2003; and January 11, 2003 to February 22, 2003. J.A. 606-09. He also submitted a physician certification in May 2003 stating that he needed to work reduced hours for an unknown period. J.A. 610-12. Inova approved a reduced work schedule for Howard, but he eventually returned to a full-time schedule in 2003 or 2004. See J.A. 301.

In 2005, Howard was verbally disciplined by his supervisor, Julie Quick, for "absenteeism and tardiness," and written documentation of the discipline was placed in his file. J.A. 104, 621. Quick explained that Howard had failed to report for work on February 2 to 7, 2005 and March 1 to 2, 2005; that he had left work early on February 9, 23, and 25, 2005; and that he was late on February 11, 14, and 18, 2005. Id. Howard asserted that he missed these days of work due to his back problems. J.A. 333-38. Quick provided Howard with FMLA forms for his doctors to certify that these absences were related to medical issues. If Howard could submit proper physician certification of these absences, Quick would withdraw documentation of the verbal warning from Howard's file.

On April 15, 2005, Howard called in sick. On April 18, 2005, Quick gave Howard a written warning, noting that his April

5

15, 2005 absence was the ninth unexcused absence in three months. Again, Quick provided Howard with FMLA forms and said she would withdraw both the verbal and written warnings if he could provide physician certification for his absences.

Howard met with Quick and Tom Williams, an Inova HR representative, on April 28, 2005. Howard had not yet provided FMLA documentation to excuse his absences. Quick and Williams explained the forms to Howard and informed him that his failure to return them could be grounds for termination. J.A. 385–86. On May 4, 2005, Howard submitted a "Certification of Health Care Provider" that a physician had signed on March 29, 2005. See J.A. 623–25. Because the certification did not provide the physician's name or contact information and was evidently filled out by two different people, Williams met with Howard and told him that the certification was insufficient to excuse Howard's absences.[1] On May 6, 2005, Williams wrote Howard, explaining that Inova had no FMLA paperwork for Howard for the last two

---

[1] The physician's signature and the written response stating the "medical facts which support [the physician's] certification" were in one person's handwriting. J.A. 623. The rest of the form, which stated that Howard needed to work a reduced schedule for an unknown duration of time, was written in another person's handwriting. Howard admitted that he filled out most of the form and asserted in his deposition that his physician, Dr. Rodney Dade, authorized him to do so. In a deposition, Dr. Dade testified that he had not authorized Howard to fill out the form. J.A. 1623–29.

6

years. Williams's letter set a May 13, 2005 deadline for Howard to provide physician certification for his absences. Howard did not submit a complete certification from Dr. Rodney Dade until May 31, 2005. The certification stated that Howard had lower back pain that required a reduced work schedule for a period of six to eight months. Inova approved a reduced work schedule for Howard based on this certification on June 1, 2005.

On June 13, 2005, Quick met with Howard and informed him that he would be transferred from the Surgical Business office to the Unit Management office to work in a supply distribution tech position. A letter from Quick to Howard memorializing their meeting stated that the new position would better accommodate his intermittent schedule and that Howard would work in the Unit Management office, "reorganizing and labeling; entering data for scrub users; [and] placing supplies . . . in proper locations," for the duration of his approved reduced work schedule. J.A. 116, 642, 1485. The letter asked Howard to start in his new position on June 15, 2005. Id.

Howard testified in his deposition that during the meeting he told Quick that he should not work near the OR because he needed to avoid exposure to blood. He did not report for work in the new supply distribution tech position until June 23, 2005. When he appeared for work, he presented a note from Dr.

7

George H. Lawrence, a psychologist, stating that Howard "has been suffering from debilitating stress and therefore unable to work from Wednesday, June 15th." J.A. 126; see also J.A. 420. The note stated that Howard was "fit to return to duty" on June 23, 2005 and should "avoid unnecessary stress." Id. at 126

On June 27, 2005, Howard filed an EEOC charge of discrimination against Inova, alleging an ADA claim. On the same day, Quick and Williams met with Howard and requested FMLA paperwork to certify the "debilitating stress" condition that Dr. Lawrence had identified. See J.A. 436. They provided Howard with the necessary forms and asked him to return them by July 13, 2005, which he did not. In the meantime he worked as a supply distribution tech, performing duties in and around the OR. He testified that while he worked in this position, he had four or five dissociative episodes related to his PTSD, only one of which he told Quick about. See J.A. 432-34. On July 12, 2005, Roxanne Kavros, one of Howard's old supervisors from his previous tenure with Inova, met with Williams to express her concern that she had seen Howard in and around the OR. She mentioned that she had supervised him in 1998 when he transferred from an OR tech position into a supply tech position

8

because of his PTSD.[2]  She was worried that "because of changes in the design of the OR department he may currently be passing by OR rooms and seeing patients or blood products."  J.A. 1492.

Howard met with Williams again on July 20, 2005.  During this meeting, Williams gave Howard another week to submit FMLA certification for the "debilitating stress" that Dr. Lawrence had diagnosed.  Howard did not submit the paperwork.  On the same day, Howard met with Quick, Williams, and other HR employees to discuss his concern that his current position was exposing him to blood.  After the meeting, he was assigned to another position in the Unit Management office to perform data entry and began work in this position on July 21, 2005.[3]

---

[2] The record contains some discrepancies as to when Howard first left Inova.  Howard testified that he left Inova in July of 1997.  J.A. 209.

[3] The record contains conflicting evidence as to what duties Howard performed in his new position.  Williams's personal notes reflect that on August 4, 2005, Julie Quick asked Howard to "clean out a break room of supplies," but that Howard refused to do so unless the request was put in writing.  J.A. 1493. Despite further negotiations between Quick and Howard, Williams's notes state that Howard continued to refuse to perform any duties in response to verbal requests.  Howard's brief states that he was "required to clean out a storage room that had not been cleaned in years" and that this room "contained materials that exacerbated his PTSD."  Petitioner's Br. at 13–14.  In his deposition, Howard testified that Inova "moved [him] to a warehouse position where [he] worked by [him]self . . . to clean out a warehouse which [he] was told by a personnel that worked in perioperative service no one had been in from anywhere from five to six years."  J.A. 448.  The tasks

9

On August 10, 2005, Howard submitted an FMLA form requesting full-time leave from August 11 to 26, 2005. J.A. 653. Accompanying the form was a "Certification of Health Care Provider" from Dr. Lawrence stating that Howard was "suffering from seizure disorder and PTSD." J.A. 128, 654. The form further stated that Howard "is at risk for seizure or possible self harm" and "needs fulltime leave." Id. at 128–29, 654–55. Williams approved Howard's leave on August 15, 2005.

On August 17, 2005, Williams sent Howard a letter confirming that Howard would return to work on August 29, 2005, the first business day after his approved leave would end. J.A. 132–33, 659-60. The letter also asked Howard to contact the health care providers who had completed Howard's most recent FMLA paperwork. Williams wanted the physicians to review a proposed job description of the position that Howard would assume after returning to work. The letter also asked the physicians to provide information about whether Howard would require a reduced work schedule; whether Howard would experience episodes of incapacity due to his health; and whether Howard would be able to perform the proposed job duties. Id.

---

of cleaning the "break room," "storage room," and "warehouse" appear to be the same. The record is unclear whether Howard actually performed this task.

On August 23, 2005, Howard sent a letter to the Department of Labor, Wage & Hour Division to file an FMLA complaint against Inova for "discriminat[ing] and retaliat[ing] against me by overriding a position that was accommodating me for my disability."[4]  J.A. 676-77.

On August 26, 2005, an Inova HR Coordinator sent Howard another letter confirming approval for his leave from August 11 to 26, 2005.  J.A. 152-53.  The letter also stated that Howard was "required to present a 'fitness-for-duty' certificate from [his] health care provider, prior to [his] return to work."  Id. at 152.  Howard testified that he understood this letter to request a "fitness for duty certification from [his] doctor that provided support that [he was] ready to come back to work medically."  J.A. 485.  By September 8, 2005, however, Howard had not submitted a fitness-for-duty certification and had not reported for work.  Id. at 484.  On that day, Williams wrote Howard to remind him that Williams had not received the information requested in his August 17, 2005 letter.  J.A. 154. Williams also informed Howard that because Howard had not returned to work as expected, Inova required "updated Family

---

[4] The DOL ultimately concluded that Inova had violated the FMLA when it transferred Howard to the supply distribution tech position and eventually terminated his employment.  See J.A. 1154-68, 1195-96.

Medical Leave paperwork from both of your Health Care Providers by Monday, September 19, 2005." Id. Williams warned Howard that "[f]ailure to clarify [Howard's] employment status with us . . . will be considered job abandonment and grounds for termination." Id. Howard did not provide the requested information. J.A. 486.

At Howard's request, Dr. Lawrence wrote to Williams on September 15, 2005. His letter explained that Howard "continues to experience occasional stress-induced seizures and dissociative episodes" and "needs evaluation and treatment by a neurologist," for which "reasonable time away from his work" was required. J.A. 158. Dr. Lawrence stated that Howard "can soon begin to function effectively again as a Patient Coordinator or in some similar position. . . . [I]f he is treated with respect and consideration and allowed to return to appropriate work around the end of this month, part time at first, he will be a productive and above average . . . employee." Id.

On September 28, 2005, Howard faxed Quick a letter informing her that he intended to return to work on October 3, 2005. J.A. 159. Williams contacted Howard that same day and confirmed receipt of Dr. Lawrence's September 15, 2005 letter, but reminded Howard that he still needed to provide FMLA paperwork from Dr. Lawrence and any other physician currently

12

treating him for his medical conditions "*before [he] return[s] to work*." J.A. 161. Williams requested the paperwork by October 7, 2005.

Howard did not return to work on October 3, 2005 as he had indicated to Quick. He faxed a letter to Williams on October 7, 2005, asking for more time to complete the FMLA certifications. J.A. 165. On October 17, 2005, Howard had neither returned to work nor submitted any of the requested FMLA certifications. On that day, Inova's Assistant Director for Human Resources wrote to Howard and informed him that "due to the fact that we have not received any requested documentation to support your leave, your employment has been terminated effective immediately." J.A. 166.

Howard sued Inova Health Care Services on August 24, 2006, asserting interference and retaliation claims under the FMLA. The district court granted summary judgment in favor of Inova and denied Howard's motion to dismiss his complaint without prejudice or, in the alternative, to amend his petition to add an ADA claim. On July 3, 2007, Howard filed a second suit against Inova, alleging that Inova had violated the ADA by discriminating and retaliating against him based on his PTSD. The district court granted Inova's 12(b)(6) motion to dismiss

13

Howard's second complaint on the basis of *res judicata*. Howard now appeals the judgments of the district courts.

## II.

Howard appeals the district court's opinion granting summary judgment on both his interference and retaliation claims under the FMLA. Our review of the district court's grant of summary judgment is de novo. Jennings v. Univ. of N.C., 482 F.3d 686, 694 (4th Cir. 2007) (en banc) (citing Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 283 (4th Cir. 2004) (en banc)).

### A.

In his interference claim, Howard asserts on appeal that Inova violated the FMLA by transferring him to an alternate position, disciplining him for unexcused absences, and terminating his employment. These claims are addressed separately below.

#### 1.

Howard argues that his transfer from a billing position in the Surgical Posting office into a supply distribution tech position in the Unit Management office violated the FMLA because it worked a hardship on him in violation of 29 C.F.R. § 825.204(d). Under 29 C.F.R. § 825.204(a), an employer may

14

transfer an employee "temporarily, during the period the intermittent or reduced leave schedule is required, to an available alternative position for which the employee is qualified and which better accommodates recurring periods of leave than does the employee's regular position." The "employer may not transfer the employee to an alternative position in order to discourage the employee from taking leave or otherwise work a hardship on the employee." 29 C.F.R. § 825.204(d).

Howard contends that the district court ignored the DOL's investigative finding that Inova had violated the FMLA when it transferred Howard. Howard further argues that his transfer from the billing position into the supply distribution tech position was unnecessary because "Inova filled Howard's billing office position with hours from existing employees who were asked to work overtime." Petitioner's Br. at 11. In addition, Howard asserts that Inova "ignored the limitations noted in its own health file that Howard was restricted to work in the billing office," id. at 13, and that the alternative supply distribution tech position "was designed to work a hardship" on him by moving him from a "sedentary white collar job" to a position where he was exposed to "blood and the smell of burning flesh," id. at 15.

15

Inova responds that "[r]egardless of when Inova was able to replace [Howard] with another full-time employee, [Howard's old billing position] required a full-time employee, and both his first and second alternative positions did not." Respondent's Br. at 34. Inova also points out that the new position offered the same salary and benefits as the old position and involved "job duties that were a rough equivalent of his tasks in the billing office." Respondent's Br. at 35. Inova further emphasizes that contrary to Howard's contention, his medical record contained no restrictions as to the kind of work he could perform.

Howard's reliance on the DOL's investigative findings is unavailing. Courts have routinely declined to rely on agency findings, in part because such a finding does not result from an adjudicatory proceeding and consequently has no preclusive effect. See Phipps v. County of McLean, No. 07-cv-1160, 2008 WL 4534066, at *4 n.3 (C.D. Ill. Oct. 7, 2008) (citation omitted); cf. Brantley v. Nationwide Mut. Ins. Co., No. RDB-07-1322, 2008 WL 2900953, at *3–5 (D. Md. July 22, 2008); Roberts v. The Health Ass'n, No. 04-CV-6637T, 2007 WL 2287875, at *4–7 (W.D.N.Y. Aug. 8, 2007); Hamilton v. Niagara Frontier Transp. Auth., Nos. 00-CV-300SR, 00-CV-863SR, 2007 WL 2241794, at *13–15 (W.D.N.Y. July 31, 2007). But cf. Ammons-Lewis v. Metro. Water

16

_Reclamation Dist. Of Greater Chicago_, No. 03 C 0885, 2004 WL 2453835, at *9 (N.D. Ill. Nov. 1, 2004) (finding that the DOL report "may create an issue of fact as to whether [the plaintiff's] first leave request was improperly denied," but granting summary judgment in favor of the defendant because the plaintiff could not show damages (citation omitted)). The district court did not err in declining to rely on the DOL's findings, and we do not rely on them now in our de novo review.

Howard stresses that his duties in his billing position were absorbed by current employees working overtime, but this argument fails to raise a fact issue as to whether his old position required a full-time employee, as Inova contends. Nor does it address the more critical issue of whether his new supply distribution tech position better accommodated a reduced work schedule. Although Howard's new position required different job duties than his old position, an alternative position intended to accommodate a reduced work schedule "does not have to have equivalent duties," just "equivalent pay and benefits." 29 C.F.R. § 825.204(c). Howard does not contend on appeal that the transfer to the supply distribution tech position resulted in a cut in his pay or benefits.

Howard's argument that Inova transferred him to work a hardship on him is similarly unpersuasive. The record does not

17

support his contention that Inova transferred him in bad faith with knowledge that exposure to blood in and around the OR would exacerbate his PTSD. The record shows that the most recent documentation that Inova possessed relating to his PTSD dated back to 2001. Howard testified in his deposition that he verbally told Quick he could not be exposed to blood and bodily fluids when she informed him of the transfer in 2005, but he had submitted no FMLA documentation of his PTSD for almost four years. All the FMLA documentation that he had provided in the preceding three years dealt solely with back problems from his car accidents in 2002. He submitted a note from Dr. Lawrence to excuse his six-day absence before beginning the new supply distribution tech position, but this letter did not notify Inova that Howard's PTSD had recurred. Rather, it stated only that Howard "has been suffering from debilitating stress" but was now "fit to return to duty." J.A. 644. Howard has not shown that a fact issue exists as to whether Inova transferred him to "work a hardship" on him under 28 C.F.R. § 825.204.

2.

Howard argues that Inova violated the FMLA by disciplining him for unexcused absences in the spring of 2005. He contends that the district court ignored evidence in the record that "Howard had provided to Inova a FMLA form for intermittent leave

18

in 2003 and that Inova had lost Howard's FMLA form." Petitioner's Br. at 10. Relying on Williams's deposition testimony that "doctor[']s notes are not required for intermittent leave once it has been approved," Howard contends that Inova "violated the FMLA regulations by failing to keep FMLA forms submitted by Howard for the required three years pursuant to 29 C.F.R. [§] 825.500." Petitioner's Br. at 14. Howard argues that this 2003 form provided sufficient certification to excuse his absences in the spring of 2005. Inova responds that contrary to Howard's contention, it does have the 2003 form that Howard submitted. Inova also points out that its policy, consistent with 29 C.F.R. § 825.308, entitles it to request recertification of an FMLA-qualifying chronic condition every 30 days.

Howard's argument is not persuasive. Regardless of whether Inova failed to retain Howard's 2003 FMLA form for three years as required by 29 C.F.R. § 825.500(b), that regulation does not require an employer to consider FMLA documentation as effective for three years. To the contrary, as Inova points out, an employer may request recertification of a chronic or "permanent/long-term condition[] under continuing supervision of a health care provider" at least every 30 days, "in connection with an absence by the employee." 29 C.F.R. § 825.308(a); <u>see</u>

19

also <u>Rhoads v. F.D.I.C.</u>, 257 F.3d 373, 383 (4th Cir. 2001) ("An employer has discretion to require that an employee's leave request 'be supported by a certification issued by the health care provider of the employee.'" (citing 29 U.S.C. § 2613(a)) (punctuation omitted)). Although Howard ultimately submitted a Certification of Health Care Provider form from Dr. Dade on May 31, 2005 and received approval for leave on a going-forward basis from March 29, 2005 to March 28, 2006, he points to no evidence in the record showing that he submitted such a form or the necessary leave requests to excuse his nine absences in the spring of 2005. The lack of FMLA documentation for his absences in 2005 is especially apparent in light of the extensive documentation he provided in 2002 and 2003 to excuse numerous absences due to his car accidents. <u>See</u> J.A. 597–602, 604–013. The record does not support a fact issue as to whether Inova improperly disciplined Howard for his absences in the spring of 2005.

### 3.

Howard argues that Inova wrongfully terminated his employment for failure to provide fitness-for-duty certificates because Inova improperly required certificates from two doctors. He also contends that Inova improperly sought more than "a simple statement" as required by 29 C.F.R. § 825.310(c). Howard

notes that Inova required Howard to ask his doctors to review a job description and to provide additional information about his condition. He points out that the DOL found Dr. Lawrence's September 15, 2005 letter, which stated that Howard could "return to appropriate work around the end of this month," J.A. 158, to be an adequate fitness-for-duty certification. See generally J.A. 1154–68, 1195–96. In addition, Howard argues that "[w]hen an employee is terminated prior to the conclusion of his 12 weeks of FMLA leave, the termination violates the FMLA." Petitioner's Reply Br. at 4. He asserts that he was still eligible for FMLA leave that would have lasted until October 19, 2005, such that Inova's termination of his employment on October 17, 2005 violated the FMLA.

In response, Inova argues that Howard failed to submit any fitness-for-duty certification, despite written requests on August 26, September 8, and September 28, 2005. Citing Bloom v. Metro Heart Group of St. Louis, Inc., 440 F.3d 1025, 1030 (8th Cir. 2006), Inova argues that Dr. Lawrence's letter was "too vague and conditional" to serve as a fitness-for-duty certification. Respondent's Br. at 23.

Bloom is inapposite to this case. The Bloom court considered a diagnostic report from a non-treating physician that the employer had paid to examine the employee during her

absence from work. When she wished to resume work, the employee had asked her two treating physicians to complete a fitness-for-duty certificate, but neither returned the form to her. As a result, she relied on the diagnosing physician's earlier report as "equivalent to a fitness-for-duty certificate." Bloom, 440 F.3d at 1030. The Eighth Circuit found this report to be "too vague and conditional to constitute a statement that [the employee] was fit-for-duty."[5] Id. Unlike the diagnostic report in Bloom, Dr. Lawrence's letter in this case was clearly intended to convey information to Inova about Howard's ability to return to work. The Sixth Circuit has held that a "fitness-for-duty certification need only state that the employee can return to work." Brumbalough v. Camelot Care Ctrs., Inc., 427 F.3d 996, 1003 (6th Cir. 2005). The Brumbalough court noted:

> While the employer may require more information, the regulation clearly states that the employer cannot delay reinstating the employee simply because the employer is obtaining further information or

---

[5] The report stated as follows:

Whatever direction or energies her previous treating physicians think best for her, it should be carried on by them in her behalf.

If she were working, I would not be able to determine any medical basis to restrict work activities as a sonographer/electrocardiographer/ultrasound technician.

Bloom, 440 F.3d at 1029.

22

clarification from the employee's health care provider. . . .

This view is bolstered by the fact that the FMLA and accompanying regulations lay out in specific detail what must be included in an initial medical certification, whereas the regulations expressly state that only a simple statement is needed in a fitness-for-duty certification. . . .

Accordingly, we hold that once an employee submits a statement from her health care provider which indicates that she may return to work, the employer's duty to reinstate her has been triggered under the FMLA.

427 F.3d at 1003–04 (citations omitted).

This circuit has not yet addressed what constitutes an adequate fitness-for-duty certification under the FMLA, but we need not reach this issue because Inova properly terminated Howard's employment under 29 C.F.R. § 825.311. Section 825.311 states:

When requested by the employer pursuant to a uniformly applied policy for similarly-situated employees, the employee must provide medical certification *at the time the employee seeks reinstatement at the end of FMLA leave* taken for the employee's serious health condition, that the employee is fit for duty and able to return to work if the employer has provided the required notice . . . . *In this situation, unless the employee provides either a fitness-for-duty certification or a new medical certification for a serious health condition at the time FMLA leave is concluded, the employee may be terminated.*

29 C.F.R. § 825.311(c) (emphases added) (citations omitted).

Under this section, Inova was entitled to terminate Howard's

23

employment because he had not provided a fitness-for-duty certification or a new medical certification when his August 2005 FMLA leave expired.[6] The record shows that Inova approved Howard's request "for intermittent leave," which "began on August 11, 2005 and will end on August 26, 2005." J.A. 679 (emphasis omitted). Inova expected Howard to resume work on August 29, 2005, see J.A. 659, and informed Howard that he needed to provide a fitness-for-duty certificate before returning to work, see J.A. 679. However, Howard did not return

---

[6] Howard argues that he still had additional FMLA leave at the time Inova terminated his employment and that this termination "violates the FMLA" because it occurred "prior to the conclusion of his 12 weeks of FMLA leave." Petitioner's Reply Br. at 4. Howard cites no regulation or statute to support this contention, which appears to rely on an untenable interpretation of 29 C.F.R. § 825.311(c). In requiring the employee to provide "either a fitness-for-duty certification or a new medical certification for a serious health condition *at the time FMLA leave is concluded*," section 825.311(c) does not refer to all FMLA leave to which the employee is then entitled, as Howard seems to suggest. If it did, its requirement of a "new medical certification for a serious health condition" is nugatory, because an employee who has reached the end of all the FMLA leave to which he is entitled in a 12-month period has exhausted that leave and may not qualify for more, regardless of whether he submits a new medical certification. *See* 29 C.F.R. § 825.200(a) (stating that an "eligible employee's FMLA leave entitlement is *limited* to a total of 12 workweeks of leave during any 12-month period" (emphasis added)). To give meaning to the entire regulation, section 825.311(c) must be interpreted to require an employee to provide a fitness-for-duty certification or a new medical certification at the time the employee's *scheduled*, *approved* FMLA leave—for which the employee has provided the necessary notice and certification—expires.

24

to work on August 29, 2005, and in fact did not attempt to return to work until October 3, 2005. Although Dr. Lawrence sent a September 15, 2005 letter stating that Howard could return to work "around the end of this month," J.A. 158, nothing in the record shows that Howard submitted proper medical certification and sought reinstatement *at the end of his approved FMLA leave*. Under 29 C.F.R. § 825.311(c), Inova was entitled to terminate Howard's employment because Howard had provided neither "a fitness-for-duty certification" nor a "new medical certification for a serious health condition at the time [his approved] FMLA leave [was] concluded."[7] Howard has not shown that a fact issue exists as to whether Inova's termination of his employment violated the FMLA.

### B.

In his retaliation claim, Howard asserts that Inova retaliated against him for exercising his rights under the FMLA by disciplining him for unexcused absences, transferring him to an alternative position that exacerbated his PTSD, and terminating his employment "before his 12 weeks of medical leave was concluded." Petitioner's Reply Br. at 7–9. His briefs

---

[7] The parties do not dispute on appeal whether Inova requested a fitness-for-duty certification from Howard "pursuant to a uniformly applied policy for similarly-situated employees." 29 C.F.R. § 825.311(c); see also 29 C.F.R. § 825.310(a).

focus on the alleged retaliatory transfer to the supply distribution tech position. He emphasizes that Inova transferred him to a position near the OR knowing that his PTSD could be triggered. He further contends that Williams and Quick, in conjunction with other Inova HR personnel, decided to leave Howard in the alternative position after learning of his EEOC complaint, even after both Howard and an old supervisor, Kavros, told them he should not be working around the OR.

In response, Inova points out that Quick informed Howard of his transfer to the supply distribution tech position on June 15, 2005, and that Howard reported for work on June 23, 2005 with a note stating that Howard was "fit to return to duty" as long as he could "avoid unnecessary stress" if possible. See J.A. 126. Inova highlights that Howard returned to work "with full knowledge of his working environment," but the note failed to advise Inova of any problem Howard might have with his proximity to the OR. Respondent's Br. at 38–39. Inova further asserts that it did not receive "notice that Howard may have been in proximity to blood or other PTSD-triggering stimuli in his alternate position until July 12, 2005 at the earliest, and there was doubt as to whether this was true or not." Id. at 39. Inova argues that "as soon as Inova had confirmation that Howard

26

had concerns about being exposed to blood, he was transferred to another position." Id.

We have held that "FMLA claims arising under the retaliation theory are analogous to those derived under Title VII and so are analyzed under the burden-shifting framework of McDonnell Douglas Corp. v. Green [441 U.S. 792, 800-06 (1973)]." Yashenko v. Harrah's N.C. Casino Co., LLC, 446 F.3d 541, 550–51 (4th Cir. 2006) (citation omitted). A plaintiff "must make a prima facie showing that he 'engaged in protected activity, that the employer took adverse action against him, and that the adverse action was causally connected to the plaintiff's protected activity.'" Id. at 551 (quoting Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1998)). If the plaintiff "establishes a prima facie case of retaliation" and the employer "offers 'a nondiscriminatory explanation' for his termination," the plaintiff "bears the burden of establishing that the employer's proffered explanation is pretext for FMLA retaliation." Id. (quoting Nichols v. Ashland Hosp. Corp., 51 F.3d 496, 502 (4th Cir. 2001)).

Applying this analysis, the district court found that Howard had failed to establish a prima facie retaliation claim because his transfer to the supply distribution tech position "was consistent with both FMLA regulations and Inova's Family

and Medical Leave policy" and did not constitute an "adverse employment action."[8]   J.A. 77.   The court held that even if the transfer did qualify as an adverse employment action, "Inova has met its burden of establishing a non-discriminatory reason for the transfer" and Howard failed to offer "any evidence of pretext."  Id.

Howard has not shown a prima facie retaliation claim. Although he argues that Inova transferred him to and retained him in the supply distribution tech position in bad faith, he has not identified evidence in the record to create a fact issue on this point.  As noted above, the most recent documentation in Inova's files relating to Howard's PTSD dated from 2001.  All the FMLA documentation that Howard had submitted in the three years preceding the recurrence of his PTSD related to his back problems.  Although Howard missed a week of work due to "debilitating stress," when he returned the note from his health care provider did not state that Howard's PTSD had recurred or that he needed to avoid exposure to blood.  Howard admitted in his deposition that he did not inform anyone at Inova about most of the dissociative episodes he experienced while working in the

_____

[8]  The district court also noted that insofar as Howard argued that Inova wrongly disciplined him for absenteeism and tardiness, Inova properly considered Howard's absences unexcused because of his failure to provide FMLA certification.

28

OR. J.A. 432-34. The record also shows that he did not submit FMLA certification of his PTSD until August 10, 2005. Howard has not shown that a fact issue exists as to whether Inova's decision to transfer him was retaliatory.

## C.

Howard has failed to establish a fact issue as to either his interference or retaliation claims. We therefore affirm the district court's grant of summary judgment in favor of Inova.

## III.

Howard also appeals the district court's denial of his leave to dismiss his complaint without prejudice or, in the alternative, to amend his complaint. The denial of a motion to dismiss without prejudice is reviewed for abuse of discretion. See Andes v. Versant Corp., 788 F.2d 1033, 1035 (4th Cir. 1986). Under Federal Rule of Civil Procedure 41(a)(2), a court may dismiss an action "at the plaintiff's request only by court order, on terms that the court considers proper." The denial of a motion for leave to amend a complaint is reviewed for abuse of discretion. Franks v. Ross, 313 F.3d 184, 192 (4th Cir. 2002) (citing HCMF Corp. v. Allen, 238 F.3d 273, 276-77 (4th Cir. 2001)). Under Federal Rule of Civil Procedure 15(a)(2), "a

29

court should freely give leave [to amend] when justice so requires."

A.

Howard argues that the district court erred in denying his motion to dismiss his complaint without prejudice under Federal Rule of Civil Procedure 41(a)(2). The purpose of Rule 41(a)(2) is "to allow voluntary dismissals unless the parties will be unfairly prejudiced." Davis v. USX Corp., 819 F.2d 1270, 1273 (4th Cir. 1987) (citations omitted). In deciding a motion to dismiss without prejudice under Rule 41(a), "a district court should consider factors such as 'the opposing party's effort and expense in preparing for trial, excessive delay and lack of diligence on the part of the movant, and insufficient explanation of the need for a voluntary dismissal,' as well as the present stage of litigation." Miller v. Terramite Corp., 114 F. App'x 536, 540 (4th Cir. 2004) (quoting Phillips USA, Inc., v. Allflex USA, Inc., 77 F.3d 354, 358 (10th Cir. 1996)).

Howard argues on appeal that granting his motion to dismiss without prejudice would not have prejudiced Inova. He asserts that Inova's efforts "in this litigation need not be repeated in any future case" because he has "stipulated that any discovery shall be admissible in a future proceeding." Petitioner's Br. at 22. He also contends that there was no excessive delay on

his part and points out that Inova "delayed producing important discovery until the last week of discovery and even beyond the discovery period." Id. at 21-22.

In response, Inova notes that Howard filed his motion to dismiss two weeks before trial and asserts that it incurred substantial expense in preparing for trial. Citing Andes, 788 F.2d at 1036-37, and related cases, Inova points out that "the expenses of discovery and preparation of a motion for summary judgment may constitute prejudice sufficient to support denial of a voluntary dismissal." Respondent's Br. at 47. Inova further argues that Howard was not diligent in pursuing his claims in this case and notes that in the initial discovery period, Howard's discovery efforts consisted of one set of interrogatories and document requests issued at the beginning of the period. Inova moved to extend the discovery deadline until April 6, 2007, because of alleged deficiencies in Howard's discovery responses. Howard only attempted to depose Inova's corporate representative on April 3, 2007, four days before the close of extended discovery. During this deposition, Howard made additional document requests based on the deponent's responses, and Inova complied. Inova stresses that it never withheld any nonprivileged responsive information from Howard at any time. In addition, Inova highlights that Howard did not

file his motion to dismiss until more than three weeks after discovery closed, and after Inova had filed its summary judgment motion.

Our jurisprudence on the issue of what constitutes sufficient prejudice to a nonmovant to support denial of a motion for voluntary dismissal under Rule 41(a)(2) is not free from ambiguity. In Davis, we noted that "[i]t is well established that, for purposes of Rule 41(a)(2), prejudice to the defendant does not result from the prospect of a second lawsuit" or "the possibility that the plaintiff will gain a tactical advantage over the defendant in future litigation." 819 F.2d at 1274-75. Similarly, in Fidelity Bank PLC v. N. Fox Shipping N.V., we held that "the mere filing of a motion for summary judgment is not, without more, a basis for refusing to dismiss without prejudice." 242 F. App'x 84, 89 (4th Cir. 2007) (quoting Andes, 788 F.2d 1033, 1036 n.4 (internal quotations and alterations omitted)). However, we have also found on multiple occasions that a district court does not abuse its discretion in denying a motion for voluntary dismissal if the case has advanced to the summary judgment stage and the parties have incurred substantial costs in discovery. See, e.g., Miller, 114 F. App'x at 540 (affirming district court's decision that plaintiff's motion for voluntary dismissal was "untimely and

would waste judicial resources" because the motion was filed well after discovery had closed and a dispositive order was imminent); Francis v. Ingles, 1 F. App'x 152, 154 (4th Cir. 2001) (affirming district court's denial of motion to dismiss without prejudice because the "plaintiff's motion came after a lengthy discovery period and merely one week before the scheduled trial date" and because "the motivation for the motion appeared to be to circumvent" a discovery ruling, which counsel could have avoided "by deposing the witness within the discovery period"); Skinner v. First Am. Bank of Va., 64 F.3d 659, at *2–3 (4th Cir. 1995) (stating that "[t]he expenses of discovery and preparation of a motion for summary judgment may constitute prejudice sufficient to support denial of a voluntary dismissal" and noting that granting a motion to dismiss is not required to allow a party to "avoid an adverse ruling in federal court"); Sullivan v. Westinghouse Elec. Corp., 848 F.2d 186, at *2 (4th Cir. 1988) ("Given the advanced stage of the proceedings, the district court's denial of [the plaintiff's] motion was not an abuse of discretion.").

We conclude that Howard has not shown that the district court abused its discretion in denying his motion to dismiss without prejudice on these facts. The posture of this case is similar to that in Andes, in which the court noted that the case

did not present "extreme prejudice to defendants," but nevertheless was "more advanced than a number of cases . . . in which voluntary dismissal was held proper." 788 F.2d at 1036 (collecting cases). The defendants in Andes asserted that they had incurred significant expenses engaging in discovery and filing motions for summary judgment. The Andes court found that under the circumstances, "there was a sufficient basis for denying [the plaintiff's] Rule 41(a)(2) motion and thus we cannot say that the district court abused its discretion in refusing to dismiss without prejudice." Id. at 1036-37.

In this case, the record fails to support Howard's explanation of the need for voluntary dismissal. Howard asserts that Inova's document production late in the discovery period revealed that Inova's reasons for transferring Howard were pretextual. He argues that "[t]his showing of pretext warrants Plaintiff being allowed to join his FMLA claim with his ADA claim that he requested a right to sue letter from the EEOC on." Petitioner's Br. at 23. As Howard's brief and the record show, however, Howard was well aware of the possibility of an ADA claim before he filed his complaint in this case. He filed an EEOC charge alleging an ADA violation on June 27, 2005. He filed his complaint alleging only his FMLA claims on August 24, 2006.

34

In addition, the record shows that Howard was not diligent in conducting the discovery that he asserts led to the new information that supports his motion for voluntary dismissal. Howard emphasizes that Inova was producing documents even after the close of discovery, but Inova points out that it only produced responsive documents due to Howard's last-minute requests at the end of the discovery period. Howard has not shown that Inova failed to provide responsive documents in a timely fashion related to any of his discovery requests.

Given the stage of the litigation, Howard's insufficient explanation for a voluntary dismissal, and his lack of diligence in pursuing both discovery and his substantive claims, the district court did not abuse its discretion in finding a "sufficient basis" to deny Howard's motion to dismiss without prejudice. Andes, 788 F.2d at 1036–37.

B.

Howard also argues that the district court erred in denying his motion to amend. Under Rule 15, the district court may grant a motion to amend the complaint "when justice so requires." A district court does not abuse its discretion in denying leave to amend if there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue

35

prejudice to the opposing party. . . , futility of amendment, etc." <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962).

Howard argues that he should be allowed to add an ADA claim based on the evidence that Inova produced toward the end of discovery, which Howard asserts supports his argument that Inova's reasons for transferring him were pretextual. Inova argues in response that Howard unduly delayed in moving to amend his complaint to add his ADA claims, noting that Howard could have requested a right-to-sue letter from the EEOC at any time after December 24, 2005 and that he did not seek to amend his complaint until almost two years after he filed his EEOC charge. Inova also contends that to allow amendment would prejudice Inova due to the advanced stage of the litigation and the different theories of recovery an ADA claim would involve.

We have noted that "[a]mendments near the time of trial may be particularly disruptive, and may therefore be subject to special scrutiny." <u>Deasy v. Hill</u>, 833 F.2d 38, 41 (4th Cir. 1987) (citation omitted). The <u>Deasy</u> court found that "a motion to amend should be made as soon as the necessity for altering the pleading becomes apparent." <u>Id.</u> (quoting 6 Charles Alan Wright & Arthur A. Miller, <u>Federal Practice & Procedure</u> § 1488 (1971)). In this case, Howard has not shown that his proposed amendment to add an ADA claim resulted from the discovery of new

36

facts that prompted his motion to amend. To the contrary, the record shows that Howard was aware of the possibility of an ADA claim almost a year before he filed his complaint.

In ruling from the bench on Howard's motion to dismiss without prejudice or to amend, the district court noted that "[t]his EEOC matter was a matter that had been known about. And while there was perhaps some information that came late, I don't believe there is any showing that that's a groundbreaking piece of information by any means." J.A. 29. The district court did not abuse its discretion in so holding.

## C.

We affirm the district court's decision to deny Howard's motion to dismiss without prejudice or, in the alternative, to amend his complaint.

## IV.

Lastly, Howard appeals the district court's decision to dismiss his ADA claim as barred by *res judicata*. We review de novo an order granting a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Giarrantano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008).

Howard argues that Inova now "seeks to benefit from the repose granted by res judicata when the facts demonstrate that

in the FMLA case the facts that would have led to the early joinder of the ADA cause of action were withheld by the actions of [Inova]." Petitioner's Br. at 25-26. He asserts that because Inova withheld critical information, his counsel "could not effectively question Williams" or "assert the ADA claim early in the previous litigation." Id. at 28.

Inova argues that the elements for *res judicata* are satisfied because the district court's decision granting summary judgment in favor of Inova is a final judgment on the merits; the parties are identical in both actions; and the claims in both actions arise out of the same core of operative facts. Inova points out that Howard does not challenge the district court's *res judicata* analysis on appeal, but instead relies on his argument that Inova withheld critical evidence. Inova reiterates its assertion that it timely provided responsive documents to all Howard's discovery requests and did not withhold information.

"For the doctrine of *res judicata* to be applicable, there must be: (1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits." Martin v. Am. Bancorporation Retirement Plan,

38

407 F.3d 643, 650 (4th Cir. 2005) (quoting <u>Pueschel v. United States</u>, 369 F.3d 345, 354-55 (4th Cir. 2004)).

The district court did not err in dismissing Howard's ADA claim as barred by *res judicata*. Quoting <u>Peugeot Motors of America, Inc. v. Eastern Auto Distributors, Inc.</u>, 892 F.2d 355, 359 (4th Cir. 1989), the district court noted that *res judicata* not only "bar[s] claims that were raised and fully litigated," but also "prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." J.A. 85. The district court found that Howard's ADA claims "clearly rely on the same factual circumstances on which he relied in his prior FMLA claim, namely Defendant Inova's decision to transfer [Howard] to a post in the hospital that exposed him to blood and the smell of burnt flesh." J.A. 86. The record bears out this conclusion. As noted above, Howard filed an EEOC charge of discrimination asserting an ADA violation well before he filed his original complaint asserting FMLA violations arising out of the same core facts. Howard could have brought his ADA claim in his original complaint, but chose not to. "Broadly speaking, a party always has the option or election of raising fewer than all the potential theories of relief that might be available. However,

it is the rule that when a party can present all grounds in support of his cause of action, he must do so, if at all, in the proceeding on that cause of action." Ohio-Sealy Mattress Mfg. Co. v. Kaplan, 90 F.R.D. 11, 15 (D.C. Ill. 1980) (citations omitted), aff'd in part and rev'd in part, 745 F.2d 441 (7th Cir. 1985), cert. denied, 471 U.S. 1125 (1985), *quoted in* 18 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure, Jurisdiction, § 4407 (2d ed. 2002).

We affirm the district court's dismissal of Howard's ADA claim as barred by *res judicata*.


V.

For the reasons outlined above, the judgments of the district courts are

AFFIRMED.